CSC

**ASE / ALL**
**Transmittal Number: 25868226**
**Date Processed: 11/09/2022**

# Notice of Service of Process

**Primary Contact:** Michael Gershenzon
James R. Williams
401 N Michigan Ave
Fl 33
Chicago, IL 60611-4250

**Electronic copy provided to:** Avi Epstein
Jazmin Tweedle

| | |
|---|---|
| **Entity:** | Lipov Medical S.C.<br>Entity ID Number 4349122 |
| **Entity Served:** | Lipov Medical S.C. d/b/a Stella Center |
| **Title of Action:** | Neuroscience Advanced Systems Inc. vs. Eugene Lipov |
| **Matter Name/ID:** | Neuroscience Advanced Systems Inc. vs. Eugene Lipov (13189175) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Cook County Circuit Court, IL |
| **Case/Reference No:** | 2022CH10899 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 11/07/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Marty J. Schwartz<br>312-345-5700 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

FILED DATE: 11/7/2022 10:41 AM 2022CH10899

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook COUNTY | SUMMONS | For Court Use Only<br>FILED<br>11/7/2022 10:41 AM<br>IRIS Y. MARTINEZ<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2022CH10899<br>Calendar, 10<br>20198836 |
|---|---|---|
| **Instructions** ▼ | | |
| Enter above the county name where the case was filed. | NEUROSCIENCE ADVANCED SYSTEMS INC.<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | Hearing Date: No hearing scheduled<br>Location: <<CourtRoomNumber>><br>v. Judge: Calendar, 10 | |
| Enter the names of all people you are suing as Defendants/ Respondents. | EUGENE LIPOV and LIPOV MEDICAL S.C. d/b/a STELLA CENTER<br>**Defendant / Respondent** *(First, middle, last name)* | 2022CH10899<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

| | |
|---|---|
| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

*In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here.*

**1. Defendant/Respondent's address and service information:**

a. Defendant/Respondent's primary address/information for service:
Name *(First, Middle, Last)*: Stella Center
Registered Agent's name, if any: Illinois Corporation Service Company
Street Address, Unit #: 801 Adlai Stevenson Drive
City, State, ZIP: Springfield, IL 62703
Telephone: ______ Email: ______

*In 1b, enter a second address for Defendant/ Respondent, if you have one.*

b. If you have more than one address where Defendant/Respondent might be found, list that here:
Name *(First, Middle, Last)*: ______
Street Address, Unit #: ______
City, State, ZIP: ______
Telephone: ______ Email: ______

*In 1c, check how you are sending your documents to Defendant/ Respondent.*

c. Method of service on Defendant/Respondent:
☐ Sheriff ☐ Sheriff outside Illinois: ______ *County & State*
☑ Special process server ☐ Licensed private detective

NOV 0 7 2022

Enter the Case Number given by the Circuit Clerk: 2022CH10899

FILED DATE: 11/7/2022 10:41 AM 2022CH10899

In **2**, enter the amount of money owed to you.

**2. Information about the lawsuit:**

Amount claimed: $ 5,000,000.00

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3. Contact information for the Plaintiff/Petitioner:**

Name *(First, Middle, Last)*: Marty J. Schwartz

Street Address, Unit #: 70 W Madison St.

City, State, ZIP: Chicago, Illinois 60602

Telephone: (312) 345-5700 Email: mschwartz@schainbanks.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**Important information for the person getting this form**

You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/.

Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*.

In **4b**, fill out:
- The court date and time the clerk gave you.
- The courtroom and address of the court building.
- The call-in or video information for remote appearances (if applicable).
- The clerk's phone number and website.

All of this information is available from the Circuit Clerk.

**4. Instructions for person receiving this *Summons* (Defendant):**

☑ a. To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service)* by e-filing or at:

Address: 50 W Washington Street

City, State, ZIP: Chicago, IL 60602

☐ b. Attend court:

On: ____________ at ____________ ☐ a.m. ☐ p.m. in ____________
*Date* *Time* *Courtroom*

**In-person at:**

____________________________________________
*Courthouse Address* *City* *State* *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: ____________________
*Call-in number for telephone remote appearance*

By video conference: ____________________
*Video conference website*

____________________
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: ____________________ or visit their website
*Circuit Clerk's phone number*

at: ____________________ to find out more about how to do this.
*Website*

**STOP!**
The Circuit Clerk will fill in this section.

11/7/2022 10:41 AM IRIS Y. MARTINEZ

**Witness this Date:** ____________________

Seal of Court — CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**Clerk of the Court:** ____________________

**STOP!**
The officer or process server will fill in the Date of Service.

**This *Summons* must be served within 30 days of the witness date.**

Date of Service: NOV 0 7 2022
*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

FILED DATE: 11/7/2022 10:41 AM 2022CH10899

| STATE OF ILLINOIS, CIRCUIT COURT<br>Cook COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only* |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | NEUROSCIENCE ADVANCED SYSTEMS INC. | |
| Enter your name as Plaintiff/Petitioner. | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br>EUGENE LIPOV and LIPOV MEDICAL S.C. d/b/a STELL/<br>**Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | 2022CH10899<br>**Case Number** |

****Stop. Do not complete the form. The sheriff or special process server will fill in the form.****

**My name is** ______________________________ **and I state**
*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**
______________________________ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: __________ Race: __________
On this date: __________ at this time: __________ ☐ a.m. ☐ p.m.
Address, Unit#: ______________________________
City, State, ZIP: ______________________________

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
On this date: __________ at this time: __________ ☐ a.m. ☐ p.m.
Address, Unit#: ______________________________
City, State, ZIP: ______________________________
And left it with: ______________________________
*First, Middle, Last*
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: __________ Race: __________
and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on __________ , 20 ______ .

☐ On the Corporation's agent, ______________________________
*First, Middle, Last*
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: __________ Race: __________
On this date: __________ at this time: __________ ☐ a.m. ☐ p.m.
Address: ______________________________
City, State, ZIP: ______________________________

FILED DATE: 11/7/2022 10:41 AM 2022CH10899

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

______________________________
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: __________ at this time: ______ ☐ a.m. ☐ p.m.
   Address: ______________________
   City, State, ZIP: ______________________
   Other information about service attempt: ______________________

2. On this date: __________ at this time: ______ ☐ a.m. ☐ p.m.
   Address: ______________________
   City, State, ZIP: ______________________
   Other information about service attempt: ______________________

3. On this date: __________ at this time: ______ ☐ a.m. ☐ p.m.
   Address: ______________________
   City, State, ZIP: ______________________
   Other information about service attempt: ______________________

**DO NOT** complete this section. The sheriff or private process server will complete it.

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:**

______________________________
*Signature by:* ☐ Sheriff
☐ Sheriff outside Illinois:

______________________________
*County and State*
☐ Special process server
☐ Licensed private detective

______________________________
*Print Name*

**FEES**

| | | |
|---|---|---|
| Service and Return: | | $ |
| Miles | | $ |
| Total | | $ 0.00 |

If *Summons* is served by licensed private detective or private detective agency:
License Number: ______________________

Hearing Date: 3/7/2023 11:00 AM
Location: Court Room 2302
Judge: Moreland, Caroline Kate

FILED
11/4/2022 3:32 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH10899
Calendar, 10
20188926

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT—CHANCERY DIVISION**

| | | |
|---|---|---|
| **NEUROSCIENCE ADVANCED SYSTEMS INC., a New York corporation,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | 2022CH10899<br>**Case no.** |
| **EUGENE LIPOV and LIPOV MEDICAL S.C. d/b/a STELLA CENTER** | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR CONSTRUCTIVE TRUST, ACCOUNTING AND OTHER RELIEF**

The plaintiff, Neuroscience Advanced Systems Inc., by its attorneys, complains of the defendants, Eugene Lipov and Lipov Medical S.C. d/b/a Stella Center, as follows:

**COUNT I**
**CONSTRUCTIVE TRUST AND ACCOUNTING**

1. The plaintiff, Neuroscience Advanced Systems Inc., is a New York corporation. It was incorporated in September 2016.

2. The defendant, Eugen Lipov ("Lipov"), is a licensed physician in state of Illinois. On information and belief, Lipov is a resident of Cook County, Illinois.

3. The defendant, Lipov Medical S.C. is an Illinois corporation which does business as Stella Center ("Stella"). Stella was incorporated in February 2020. Lipov is the president and secretary of Stella. Lipov is also a shareholder of Stella.

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

4. Lipov is a shareholder of the plaintiff and owns 30% of the outstanding shares. The other shareholder of the plaintiff is Philip A. DeFina ("DeFina"), who owns 70% of the outstanding shares. The plaintiff is a closely held corporation with only two shareholders.

5. In or about February 2018, the plaintiff, Lipov and Defina entered into a shareholder agreement ("Agreement"). A copy of the shareholder agreement is attached here as **Exhibit A.**

6. Paragraph 4 provides that so long as the Agreement is in effect, Lipov and Defina shall be officers and directors of the plaintiff.

7. As an officer and director of the plaintiff, Lipov owed fiduciary duties to the plaintiff. Lipov further owed fiduciary duties to the plaintiff as a shareholder in a closely held corporation.

8. Pursuant to paragraph 1of the Agreement Defina granted an exclusive license to the plaintiff for use of Defina's "proprietary electrical brain mapping system."

9. Pursuant to paragraph 2 of the Agreement, Lipov granted an exclusive license to the plaintiff for Lipov's proprietary procedures (excluding certain procedures) "for the treatment of Post-Traumatic Stress Disorder which involves the use of medications for what is known as Stellate Ganglion Block procedure or "SGB" as well as the use of Pulsed Radiofrequency Treatment."

10. Paragraph 3 of the Agreement required both shareholders to "devote such time and best efforts as needed to continue to develop and refine the procedures referred to above to be used together to form a coherent plan and modality for treatment of Post-

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

Traumatic Stress Disorders and to further license or sublicense the combined procedure to various medical doctors and facilities for the diagnosis and treat [*sic*] of patients."

11. Paragraph 5 of the Agreement defined "Confidential Information" to include the proprietary information Lipov and Defina were providing to the plaintiff and required Lipov and Defina to keep plaintiff's Confidential Information from public disclosure. Paragraph 5 prohibited Lipov and Defina from disclosing Confidential Information to third parties or using Confidential Information for any purpose except as contemplated by the Agreement or as authorized by the plaintiff.

12. Paragraph 10 of the Agreement provided that upon termination of a shareholder or the Agreement, neither shareholder for a period of three years thereafter, "work for, own an interest in, operate, join, control, participate in or be connected, either directly or indirectly, as an officer, employee, agent, independent contractor, advisor, consultant, shareholder or principal of and [*sic*] corporation or other entity which diagnoses, treats or refers patients for treatment of Post-Traumatic Stress Disorder, or in any way competes, either directly or indirectly, with the business of the Corporation [plaintiff], and no Shareholder shall induce or influence any person who is engaged by the Corporation as an employee, licensee, agent, or independent contractor, to engage in or otherwise participate in any business or activity which directly or indirectly competes with the Corporation.

13. Paragraph 12 provides that the prevailing party shall be entitled to recover its reasonable attorney's fees, costs, and necessary disbursements in any action to enforce or interpret the rights arising out of or relating to the Agreement.

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

14. In or about 2018 or 2019 Defina procured Mike Modica as a potential investor in plaintiff. Modica agreed to invest in the plaintiff.

15. Thereafter, in or about 2019, Lipov informed Defina that he was going to create a competing company using plaintiff's Confidential Information. He further informed Defina that Modica was going to invest in Lipov's new company.

16. Modica never invested in the plaintiff.

17. In February 2020, Lipov caused Stella to be incorporated. Modica invested in Stella.

18. Stella treats patients suffering from post-traumatic stress disorder using plaintiff's Confidential Information.

19. Stella knows that it is using plaintiff's Confidential Information in its business because Lipov possesses this knowledge and Lipov is president of Stella.

20. Lipov breached his fiduciary duty owed to the plaintiff by failing to act in the best interests of the plaintiff including by:

a. failing to devote such and time and best efforts as needed to continue to develop and refine the procedures described in paragraphs 1 and 2 of the Agreement;

b. disclosing Confidential Information to third parties, using the Confidential Information to compete with the plaintiff, and using the Confidential Information in a manner not contemplated by the Agreement;

c. inducing or influencing Modica not to invest in plaintiff and to invest in Stella; and/or

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

d. Otherwise creating and operating a company that competes with the plaintiff.

21. Lipov devoted little or no time to plaintiff's business. As a result plaintiff never was able to successfully operate.

22. The plaintiff does not have access to the books and records of the plaintiff so plaintiff does not know how much in profits the defendants have made using plaintiff's Confidential Information and otherwise taking advantage of Lipov's breach of fiduciary duty.

23. The defendants have been unjustly enriched at the expense of the plaintiff by using plaintiff's Confidential Information for their own benefit and not for the benefit of the plaintiff.

24. The plaintiff is entitled to a constructive trust on all profits that the defendants have earned arising from Lipov's breach of fiduciary duty and use of the Confidential Information.

WHEREFORE, the plaintiff, Neuroscience Advanced Systems Inc., prays for judgment in its favor and against the defendants, Eugene Lipov, and Lipov Medical S.C. d/b/a Stella Center as follows:

a. The court order the defendants to account for all profits they earned as a result of Lipov's breach of fiduciary duty and use of plaintiff's Confidential Information;

b. The court declare that the defendants are holding these profits as constructive trustee and for the benefit of the plaintiff;

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

c. The court order the defendants to pay the aforesaid profits to the plaintiff;

d. The court award prejudgment interest on the sums owed to the plaintiff;

e. The court award attorneys' fees, litigation costs, and court costs to the plaintiff; and

f. The court award such other relief as is just in the premises.

**COUNT II**
**BREACH OF FIDUCIARTY DUTY AGAINST LIPOV**

25. The plaintiff realleges paragraphs 1 through 21.

26. As a direct and proximate consequence of the breach of fiduciary duty, the plaintiff has been damaged in an amount not yet determined.

27. At all times relevant, Lipov acted willfully and maliciously. He knew that the plaintiff could not operate successfully unless he devoted sufficient time to plaintiff's business and did not compete with the plaintiff. Lipov knew his actions in breaching his fiduciary duties would result in plaintiff having zero profits and Lipov and Stella making significant profits. Accordingly, the plaintiff is entitled to punitive damages.

WHEREFORE, the plaintiff, Neuroscience Advanced Systems Inc., prays for judgment in its favor and against the defendant, Eugene Lipov, in the amount of his compensatory damages, punitive damages of $5 million plus costs of suit.

**COUNT III**
**BREACH OF CONTRACT AGAINST LIPOV**

28. The plaintiff realleges paragraphs 1 through 19.

29. Lipov breached the Agreement, *inter alia*, in one or more ways:

a. Paragraph 3 of the Agreement: failing to devote such and time and best

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

efforts as needed to continue to develop and refine the procedures described in paragraphs 1 and 2 of the Agreement;

b. Paragraph 5 of the Agreement: disclosing Confidential Information to third parties, using the Confidential Information to compete with the plaintiff, and using the Confidential Information in a manner not contemplated by the Agreement; and/or

c. Paragraph 10 of the Agreement: inducing or influencing Modica not to invest in plaintiff and to invest in Stella.

30. As a direct and proximate cause of the breach, the plaintiff has been damaged in an amount not yet known, but believed to be in the millions of dollars.

31. The plaintiff performed and/or was ready to perform all its obligations under the Agreement as of the time of Lipov's breach.

32. Plaintiff is entitled to attorneys' fees pursuant to paragraph 12 of the Agreement.

WHEREFORE, the plaintiff, Neuroscience Advanced Systems Inc., prays for judgment in its favor and against the defendant, Eugene Lipov, in the amount of its damages, plus interest, attorneys' fees, litigation costs, and court costs.

Neuroscience Advanced Systems Inc.,

By /s/ Marty J. Schwartz
One of its attorneys

Marty J. Schwartz Attorney No. 50839
Ben Weber
Schain Banks Kenny & Schwartz
Three First National Plaza Ste 2300
Chicago, Illinois 60602
(312)345-5700
Mschwartz@schainbanks.com

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

# Exhibit

# A

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

# SHAREHOLDERS AGREEMENT

## NEUROSCIENCE ADVANCED SYSTEMS INC.

a NEW YORK CORPORATION

Agreement made between **NEUROSCIENCE ADVANCED SYSTEMS INC.**, a corporation organized and existing under the laws of New York with its principal office at 109 Lafayette Street, Suite 802, New York County, New York, referred to in this agreement as the "Corporation," and **PHILIP A. DeFINA, Ph.D.** (hereinafter "DeFina"), residing at ______________________________________, and **EUGENE LIPOV, M.D.** (hereinafter "Lipov"), residing at ______________________________________, referred to in this agreement as "Shareholders."

**WITNESSETH:**

WHEREAS, DeFina has developed certain proprietary data bases and algorithms with an electrical brain mapping system which is able to demonstrate the safety and efficacy of SGB treatments in patients with Post Traumatic Stress Disorder by measuring changes in different parameters of neurophysiology, prior to and following the treatment regimen; and furthermore, De Fina will contribute, with his neuroscience expertise, customized brain mapping procedures specific to Post-Traumatic Stress, Post-Partum Depression and Post-Menopausal Syndrome that will be able to accurately and reliably sub-type these disorders, track recovery patterns and predict outcomes. DeFina will also arrange for funding mechanisms to the corporate entity and will coordinate activities with the military and first responder groups.

WHEREAS, Lipov has developed a proprietary procedures and expert knowledge for the treatment of Post Traumatic Stress Disorder ( and other neuropsychiatric conditions) which involves the use of medications, for what is known as a Stellate Ganglion Block procedure or "SGB" as well as the use of Pulsed Radiofrequency Treatment, and

WHEREAS, each of the shareholders shall hereby contribute to the corporation the exclusive right to use their respective proprietary procedures in exchange for the issuance to them of their share of the common stock of the Corporation, and

8-9-17

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

WHEREAS, all of the issued and outstanding stock of the Corporation will be issued pursuant hereto as follows:

| | |
|---|---|
| PHILIP A. DeFINA, Ph.D. | 70 Shares |
| EUGENE LIPOV, M.D. | 30 Shares; |

and

WHEREAS, the Shareholders deem it in the best interests of the Corporation to act together concerning the management and affairs of the Corporation as well as to make provision for the contingency of the death or disability of any Shareholder and to set forth the manner and method by which a Shareholder may sell his Stock during his lifetime.

**NOW, THEREFORE, IT IS AGREED AS FOLLOWS:**

1. In consideration of the issuance to him of 70 Shares of the common stock, having no par value, DeFina hereby grants to the Corporation an exclusive license for the use of his proprietary electrical brain mapping system which is able to demonstrate the efficacy of the treatment by measuring changes in different parameters of neurophysiology prior to and following the treatment regimens. DeFina represents that he has the full right to license such technology and information to the corporation. In addition DeFina is presently the Chief Executive Officer of International Brain Research Foundation, Inc. ("IBRF"). IBRF is a 501(c)(3) non-profit organization organized to promote research and treatment of various brain disorders of consciousness. DeFina hereby represents that there is no conflict of interest or loss of corporate opportunity by his participation in the Corporation. In the event the Corporation ceases business operations or dissolves, all rights assigned pursuant hereto shall revert to DeFina.

2. In consideration of the issuance to him of 30 Shares of the common stock having no par value, Lipov hereby grants to the Corporation an exclusive license, excluding clonidine + bupivacaine [or long acting anesthetic] as well as excluding bio-assessment tools [using cell phone and head sets], for the use of his proprietary procedures for the treatment of Post Traumatic Stress Disorder which involves the use of medications for what is known as a Stellate Ganglion Block procedure or "SGB" as well as the use of Pulsed Radiofrequency Treatment. Lipov represents that

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

he has the right to license such technology and information to the corporation. In addition, Lipov is founder of Chicago Medical Innovations which is more recently known as Global Post-Traumatice Street Injury Foundation ("GPTSIF"). GPTSIF is a 501(c)(3) non-profit organization organized to promote research and treatment of PTSD and Hot Flashes utilizing Stellate Ganglion Block/Chicago Block. Lipov serves as a medical consultant to GPTSIF. Lipov hereby represents that there is no conflict of interest or loss of corporate opportunity by his participation in the Corporation. In the event the Corporation ceases business operations or dissolves, all rights assigned pursuant hereto shall revert to Lipov.

3. The Shareholders agree that they will each devote such time and best efforts as needed to continue to develop and refine the procedures referred to herein above to be used together to form a coherent plan and modality for treatment of Post Traumatic Stress Disorders and to further license or sublicense the combined procedure to various medical doctors and facilities for the diagnosis and treat of patients. In furtherance of the Corporation's purpose the Shareholders will cooperate in developing and preparing training manuals and programs for the use of the licensed/sublicensed technology and to actively participate in the training of licensees.

4. So long as this Agreement is in effect, the Shareholders shall maintain themselves as the Directors and Officers of the Corporation.

5. The Corporation possesses, and will possess, Confidential Information (as hereinafter defined) regarding its treatments of PTSD and the development of certain treatment protocols treatment and measurement of PTSD. The Shareholders shall keep such Confidential Information and Materials from public disclosure except upon the prior written consent of all Shareholders. As used herein:

a. "Confidential Information" shall mean the proprietary information provided to the Corporation by the Shareholders and any nonpublic information that the Corporation specifically marks and designates, either orally or in writing, as confidential or which, under the circumstances surrounding the information, ought to be treated as confidential or which the Shareholders or either one of them creates or produces in the course of performing services for the Corporation. "Confidential Information" includes, but is not limited to, information received

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

from others that the Corporation is obligated to treat as confidential and other materials and information of a confidential nature.

b. "Confidential Materials" shall mean all the tangible materials containing Confidential Information, including without limitation, written or printed documents, computer disks, tapes, digital video disks (DVD), compact disks (CD), or digital drives or any kind.

c. Shareholders shall not disclose any Confidential Information to third parties without the prior written authorization of the Corporation. Notwithstanding the foregoing, a Shareholder shall not at any time disclose to any third parties any Confidential Information compromising a trade secret of the Corporation or any Confidential Information of any other party to whom the Corporation owes an obligation. However, a Shareholder may disclose Confidential Information in accordance with judicial or other governmental orders, provided he shall give the Corporation reasonable notice prior to such disclosure and shall comply with any applicable protective order or equivalent.

d. No Shareholder shall use any Confidential Information or Confidential Materials of the Corporation for any purposes except those expressly contemplated hereby or as authorized by the Corporation.

e. Shareholders shall take reasonable security precautions, which shall in any event be as great as the precautions it takes to protect their own confidential information, to keep confidential the Confidential Information.

f. Confidential Information and Confidential Material may be disclosed, reproduced, summarized or distributed only in pursuance of the Corporation's purposes, and only as otherwise provided hereunder. The Shareholders each agree to segregate all such Confidential Material from the confidential material of others to prevent commingling.

g. Shareholders shall notify the Corporation immediately upon discovery of any unauthorized use or disclosure of Confidential Information or Confidential Materials, or any other breach of this the confidentiality provisions of this Agreement and will cooperate with the Corporation in every reasonable way to help the Corporation gain possession of the

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

Confidential Information and/or Confidential Materials and prevent further unauthorized use or disclosure.

h. Each Shareholder acknowledges that monetary damages may not be a sufficient remedy for damages resulting from unauthorized disclosure of Confidential Information and that the Corporation shall be entitled to, without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

i. All Confidential Information and Confidential Materials are and shall remain the sole and exclusive property of the Corporation.

6. The Shareholders' stock in the Corporation may not be sold, transferred, pledged or assigned except as herein provided.

a. In the event that either of the shareholders ceases to be actively involved in the work of the corporation by virtue illness, retirement or death of either of the shareholders, the corporation shall have the option to purchase all or any part of the shares owned by the terminated shareholder, which option the corporation may exercise in writing to the such shareholder or to the shareholder's personal representative within 30 days of the date of such shareholder's termination. The purchase price of such shares shall be as hereinafter provided. In the event of termination by death of any shareholder, the shareholder's personal representative may not retain the shareholder's shares and shall have no shareholder voting rights.

b. Subject to the provisions of this paragraph 4 of this Agreement, the valuation/purchase price of each share of stock offered for sale pursuant to the terms of this Agreement shall be determined in the following manner:

c. The Shareholders hereby set the sum of One Hundred and 00/100 Dollars ($100.00) as the agreed upon value of one (1) share of stock (hereinafter referred the as the "Stipulated Value"). Not less often than annually hereafter, the Shareholders shall unanimously agree upon a single amount, which shall represent the adjusted Stipulated Value. In the event that the Stipulated Value has not been agreed upon or adjusted for a period in excess of twelve (12) months and it becomes necessary to calculate the

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

value of a share of stock, the Shareholders shall select a certified public accountant, or if the Shareholders cannot agree upon such accountant then an independent certified public accountant shall be selected by a Judge of the Supreme Court of the State of New York. The accountant, whether agreed upon or selected, shall calculate an Adjusted Determined Value (as hereafter defined) of one (1) share of stock, which Adjusted Determined Value shall be the Stipulated Value.

d. For the purposes of this agreement, the Adjusted Determined Value shall mean the last Stipulated Value plus or minus the difference between the book value of the share as of the date of such last Stipulated Value and its valuation as of the end of the month immediately preceding the month in which the shares of stock are offered for sale ("Valuation Date"), in accordance with the regular methods and practices employed by the corporation in keeping its book, applied on a basis consistent with its regular annual reports, but subject to the following provisions:

i. No allowance of any kind shall be made for goodwill, tradename, or any similar intangible asset;

ii. All accounts payable shall be taken at their face amount, less discounts deductible from them, and all accounts receivable shall be taken at their face amount, less discounts to the customers and a reasonable reserve for bad debts;

iii. All real property, shares in subsidiary corporations, fixtures, and equipment shall be taken at the valuation appearing on the books of the corporation;

iv. Inventory of supplies shall be computed at cost or market value, which-ever is the normal practice in connection with such accounting; and

v. All unpaid and accrued taxes, including federal income taxes, shall be deducted as liability. A further deduction shall be made for accrued liability for payment of incentive bonuses prorated to the day of evaluation, but no deductions shall be made for unpaid contributions to profit-sharing plans, if any.

e. The term "accounts receivable" shall mean amounts billed to licensees but unpaid by them at the end of the month immediately preceding the Valuation Date. Accounts

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

receivable shall be considered an asset of the corporation and shall be given the value as set forth above.

f. The last valuation established as provided in this agreement shall be controlling at the termination of either of the Shareholders as defined by this agreement, provided that in the event that the life insurance provided for in this agreement and carried on the life of any of Shareholder exceeds the value of such shareholder's interest as determined in this agreement, the excess shall be payable to the executor, administrator, surviving spouse, or other legal representative of the shareholder's estate.

7. a. The entire purchase price of all shares purchased by the corporation under this agreement shall be paid to the terminated shareholder or the shareholder's personal representative within 180 days of the exercise of the option, at which time certificates representing the shares shall be delivered to the corporation.

b. Alternatively, the corporation may, at its own election, pay the purchase price for the shares in equal, annual installments, payable on the anniversary date of the exercise, commencing no sooner than 120 days of termination, and for a period of three years or any such shorter time period as all shareholders may unanimously agree. Payment shall also be made by delivering to the selling shareholder or to the share- holder's representative promissory notes by the corporation, for the respective balance of the purchase price and providing for equal annual payments of the principal over a period not to exceed three years from the date of the exercise of the applicable option, the annual payments to be made on the anniversary date of the exercise.

c. The corporation shall have the right to prepay the entire unpaid principal and accrued interest, without interest penalty, at any time. The promissory notes shall bear interest at the rate of three percent per annum, payable annually, and shall provide for the acceleration of the maturity of unpaid principal and interest of all promissory notes written by the corporation in the event that any installment of principal or interest remains unpaid for a period of [number of days] days after due date.

d. In the event that the shares are purchased by a shareholder, then the same payment terms shall apply as set forth in Paragraphs (a) and (b) of this Paragraph.

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

e. Payment shall be complete when, in addition to the requirements of subparagraphs (a)-(c), above, the remaining shareholder(s) execute a Personal Guaranty, which form is annexed as Schedule A, securing the payment to the terminated shareholder or the executor, administrator, surviving spouse, or other legal representative of the terminated shareholder's estate.

8. a. In the event that the shares of a terminated shareholder are purchased by the remaining shareholder, the shares so sold shall be pledged with the terminated shareholder or that shareholder's estate to secure full payment of the purchase price. As long as the purchaser is not in default, the purchasing shareholder shall have all voting rights with respect to the shares so sold.

b. Dividends, if any, which are payable on the shares so sold, after deduction of federal income taxes payable by the purchasing shareholder with respect to such dividends, shall be paid against unpaid balances of the purchase price due from purchasing shareholders under this agreement.

c. On full payment of the purchase price to the terminated shareholder or that shareholder's representative the transfer of the shareholder's interest in the shares to the purchasing shareholder or corporation shall be complete. All necessary federal and state transfer taxes shall be paid by the corporation. Except as provided for in this agreement, no purchasing shareholder may pledge, hypothecate, or encumber the purchased shares of a terminated shareholder until the payment of the purchase price is completed.

9. The Corporation may obtain life insurance policies on the lives of each of the Shareholders. In the event such life insurance are obtained, then the Corporation shall collect the proceeds thereof, hold same as trustee and turn same over to the legal representative of the deceased Shareholder as payment hereunder. In the event said insurance proceeds exceed the amount of the purchase price provided herein, then the legal representative of the deceased Shareholder shall be entitled to such total proceeds as payment in full. In the event the purchase price exceeds the proceeds of insurance, then the balance shall be paid pursuant to terms hereinabove.

10. Upon termination of a Shareholder, or of this Agreement, neither Shareholder shall for a period of three (3) years thereafter, work for, own an interest in, operate, join, control, participate in or be connected, either directly or

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

indirectly , as an officer, employee, agent, independent contractor, advisor, consultant, shareholder or principal of and corporation or other entity which diagnoses, treats or refers patients for treatment of Post Traumatic Stress Disorder, or in any way competes, either directly or indirectly, with the business of the Corporation, and no Shareholder shall induce or influence any person who is engaged by the Corporation as an employee, licensee, agent, or independent contractor, to engage in or otherwise participate in any business or activity which directly or indirectly competes with the Corporation.

11. None of the provisions of this Agreement shall be deemed to have been waived by any act of acquiescence on the part of the Corporation, its agents, or employees but only by an instrument in writing signed by an authorized officer of the Corporation. No waiver of any provision of this Agreement shall constitute a waiver of any provision(s) or of the same provision on another occasion. Failure of either party to enforce any provisions of this Agreement shall not constitute waiver of such provision or any other provisions of this Agreement.

12. If any action at law or in equity is necessary to enforce or interpret the rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which it may be entitled.

13. If any provision of the Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect. Should any of the obligations of this Agreement be found illegal or unenforceable as being too broad with respect to the duration, scope or subject matter thereof, such obligations shall be deemed and construed to be reduced to the maximum duration, scope or subject matter allowable by law.

14. This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof. It shall not be modified except by a written agreement subsequent to the date of this Agreement and signed by both parties.

15. This Agreement shall be construed and governed by the laws of the State of New York, and both parties further consent

FILED DATE: 11/4/2022 3:32 PM 2022CH10899

to jurisdiction by the state and federal courts sitting in the State of New York.

IN WITNESS WHEREOF, the parties have hereunto set the hands and seals this 28 day of February, 2018.

NEUROSCIENCE ADVANCED SYSTEMS INC.

by ______________________
PHILIP A. DeFINA

by ______________________
EUGENE LIPOV

______________________
PHILIP A. DeFINA, individually

______________________
EUGENE LIPOV, individually

8-9-17

AFFIDAVIT OF SERVICE

P7554348

NAPOLI SHKOLNIK, PLLC Desiree Cotignola

IN THE CIRCUIT COURT THIRD JUCIDIAL CIRCUIT MADISON COUNTY, ILLINOIS

RUEBEN RICE, ETAL

PLAINTIFF

- vs -

HONEYWELL INTERNATIONAL INC., F/K/A ALLIEDSIGNAL, INC., AS SUCCESSOR-IN-INTEREST TO THE BENDIX CORPORATION, ETAL

DEFENDANT

index No. 2022LA 001388
Date Filed
File No. ASB 8494
Court Date:

AFFIDAVIT OF SERVICE

STATE OF ILLINOIS, COUNTY OF SANGAMON :SS:

JOHN J PENNELL, being duly sworn deposes and says:

Deponent is not a party herein, is over 18 years of age and resides in the State of ILLINOIS.

On 11/07/2022 at 11:20 AM,

at 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703,

deponent served the within SUMMONS AND ORIGINAL COMPLAINT on: **HONEYWELL INTERNATIONAL INC., F/K/A ALLIEDSIGNAL, INC., AS SUCCESSOR-IN-INTEREST TO THE BENDIX CORPORATION**, the **DEFENDANT** therein named.

____#1 INDIVIDUAL By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person therein.

X #2 CORPORATION By delivering a true copy of each personally to LYLE NEEMAN, who provided verbal confirmation that he or she is authorized by appointment or law to receive service on behalf of the **DEFENDANT**.

Deponent knew the person so served to be the AUTHORIZED AGENT of the corporation, and authorized to accept service on behalf of the corporation.

____#3 SUITABLE AGE PERSON By delivering a true copy of each to ______ a person of suitable age and discretion. Said premises is **DEFENDANT's**: [ ] actual place of business [ ] dwelling house (usual place of abode) within the state.

____#4 AFFIXING TO DOOR By affixing a true copy of each to the door of said premises, which is **DEFENDANT's**: [ ] actual place of business [ ] dwelling house (usual place of abode) within the state.

Deponent was unable, with due diligence to find **DEFENDANT** or a person of suitable age and discretion, having called thereat

on the ______ day of ______ at ______
on the ______ day of ______ at ______
on the ______ day of ______ at ______
on the ______ day of ______ at ______

Address confirmed by

____#5 MAIL COPY ~~On ______ I deposited in the United States mail a true co~~py of the aforementioned documents properly enclosed and sealed in a post-paid wrapper addressed to the above address. Copy mailed 1st class mail marked personal and confidential not indicating on the outside thereof by return address or otherwise that said notice is from an attorney or concerns an action against the person to be served.

____#6 DESCRIPTION (USE WITH #1, 2 OR 3) Deponent describes the person served as aforesaid to the best of deponent's ability at the time and circumstances of the service as follows.

Sex: FEMALE Color: WHITE Hair: BROWN
Age: 70 Height: 5'5" Weight: 150#
OTHER IDENTIFYING FEATURES: ______

____#7 WITNESS FEES The authorized witness fee and / or traveling expenses were paid (tendered) to the **DEFENDANT** in the amount of $______

____#8 MILITARY SRVC Deponent asked person spoken to whether the **DEFENDANT** was presently in military service of the United States Government or of the State of ______ and was informed that **DEFENDANT** was not.

____#9 OTHER

NOTARY NAME & DATE 11/07/2022

Lexitas
1235 BROADWAY 2ND FLOOR
NEW YORK, NY 10001
Reference No: 7-NPL-7554348