IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEUROSCIENCE ADVANCED SYSTEMS INC., a New York corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case no. 22-cv-06847 |
| EUGENE LIPOV and LIPOV MEDICAL S.C. d/b/a STELLA CENTER | ) ) ) ) | Hon. Charles P. Kocoras |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE TO THE DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

The Plaintiff, Neuroscience Advanced Systems Inc., by its attorneys, submits this Response to the Defendants' Rule 12(b)(6) Motion to Dismiss.

**Summary and Factual Allegations**

The Defendants rely on undeveloped arguments, inapplicable law, and a document that must be disregarded under Rule 12(b)(6) to erroneously conclude that the Plaintiff failed to state valid claims for constructive trust and accounting against the Defendants, Eugene Lipov ("Lipov") and Lipov Medical S.C. d/b/a Stella Center ("Stella") (Count I), breach of fiduciary duty against Lipov (Count II), and breach of contract against Lipov (Count III). For the reasons stated more fully below, the Defendants' arguments are without merit, and their Rule 12(b)(6) Motion to Dismiss should be denied in its entirety.

This matter involves the Defendants' willful and malicious attempts to destroy the Plaintiff, despite Lipov being a 30% shareholder, by forming a competing entity. [Dkt. # 1-1, ¶ 4]. Philip A. DeFina ("DeFina") is the other shareholder of the Plaintiff. *Id.* DeFina owns 70% of the

outstanding shares of the Plaintiff. *Id.* In or about February 2018, the Plaintiff, Lipov, and DeFina entered into a shareholder agreement ("Agreement"). [Dkt. # 1-1, ¶ 5, Ex. A].

The Defendants concede that the Plaintiff and Lipov's relationship is governed by the Agreement. [Dkt. # 11-1, at pg. 2 n.1]. Under Paragraph 4 of the Agreement, Lipov and DeFina are officers and directors of the Plaintiff. [Dkt. # 1-1, ¶ 6]. Therefore, Lipov owes fiduciary duties to the Plaintiff as an officer, director, and shareholder in a closely held company. [Dkt. # 1-1, ¶ 7].

Under Paragraph 1 of the Agreement, DeFina granted an exclusive license to the Plaintiff for use of DeFina's "proprietary electrical brain mapping system." [Dkt. # 1-1, ¶ 8]. Pursuant to Paragraph 2 of the Agreement, Lipov granted an exclusive license to the Plaintiff for Lipov's proprietary procedures (excluding certain procedures) "for the treatment of Post-Traumatic Stress Disorder which involves the use of medications for what is known as Stellate Ganglion Block procedure or 'SGB' as well as the use of Pulsed Radiofrequency Treatment." [Dkt. # 1-1, ¶ 9]. Paragraph 3 of the Agreement required both shareholders to "devote such time and best efforts as needed to continue to develop and refine the procedures referred to above to be used together to form a coherent plan and modality for treatment of Post-Traumatic Stress Disorders and to further license or sublicense the combined procedure to various medical doctors and facilities for the diagnosis and treat [*sic*] of patients." [Dkt. # 1-1, ¶ 10].

Paragraph 5 of the Agreement defined "Confidential Information" to include the proprietary information Lipov and DeFina were providing to the plaintiff and required Lipov and DeFina to keep the Plaintiff's Confidential Information from public disclosure. [Dkt. # 1-1, ¶ 11]. Paragraph 5 of the Agreement also prohibited Lipov and DeFina from disclosing Confidential

2

Information to third parties or from using Confidential Information for any purpose except as contemplated by the Agreement or as authorized by the Plaintiff. [Dkt. # 1-1, ¶ 11].

Paragraph 10 of the Agreement provided that upon termination of a shareholder or the Agreement, neither shareholder for a period of three years thereafter, may "work for, own an interest in, operate, join, control, participate in or be connected, either directly or indirectly, as an officer, employee, agent, independent contractor, advisor, consultant, shareholder or principal of and [sic] corporation or other entity which diagnoses, treats or refers patients for treatment of Post-Traumatic Stress Disorder, or in any way competes, either directly or indirectly, with the business of the [Plaintiff], and no Shareholder shall induce or influence any person who is engaged by the [Plaintiff] as an employee, licensee, agent, or independent contractor, to engage in or otherwise participate in any business or activity which directly or indirectly competes with the [Plaintiff]." [Dkt. # 1-1, ¶ 12].

In or about 2018 or 2019, DeFina procured Mike Modica ("Modica") as an investor in the Plaintiff, and Modica agreed to invest in the Plaintiff. [Dkt. # 1-1, ¶ 14]. In or about 2019, Lipov informed DeFina that he was going to create a competing company using the Plaintiff's Confidential Information and that Modica was going to invest in Lipov's competing company. [Dkt. # 1-1, ¶ 15]. In February 2020, Lipov incorporated Stella, the competing company. [Dkt. # 1-1, ¶ 17]. Rather than invest in the Plaintiff, Modica invested in Stella. [Dkt. # 1-1, ¶ 17]. Stella treats patients suffering from post-traumatic stress disorder using the Plaintiff's Confidential Information. [Dkt. # 1-1, ¶ 18]. The Plaintiff was never able to successfully operate because Lipov devoted little or no time to the Plaintiff's business. [Dkt. # 1-1, ¶ 21]. Lipov knew that the Plaintiff could not operate successfully unless he devoted sufficient time to the Plaintiff's business and did not compete with the Plaintiff. [Dkt. # 1-1, ¶ 27]. Lipov knew his actions in breaching his

3

fiduciary duties would result in the Plaintiff having zero profits and Lipov and Stella making significant profits. *Id.*

## Legal Standard

To avoid dismissal under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true," to raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678). A complaint containing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. 8(a)(2)), and providing defendant "fair notice" of the claim and basis for it, is sufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party when applying this legal standard. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018). Courts may not resolve "inherently factual issues" on a motion to dismiss under Rule 12(b)(6). *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chi.*, 45 F.3d 1144, 1154 (7th Cir. 1995).

## Argument

**I.      Illinois Law Should Apply to Counts I and II.**

The Defendants urge the Court to apply New York law based on the choice of law provision in Paragraph 15 of the Agreement. Under the Illinois choice of law analysis, New York law should only apply, at most, to Count III against Lipov for breach of the Agreement. The Court in *Facility Wizard Software, Inc. v. Se. Tech. Services, LLC*, 647 F. Supp. 2d 938 (N.D. Ill. 2009) explained the Illinois choice of law rules as follows:

4

> Under Illinois choice of law rules, courts must apply a two-part analysis to determine the breadth of a choice of law provision. First, courts examine the breadth and language of the choice-of-law provision to determine whether the parties intended the choice-of-law provision to govern all claims between them. Courts should look to whether the language of the provision encompasses all rights and liabilities arising out of the transaction or solely the construction of the contract. Second, courts determine whether the tort claims are dependent on the contract. Tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause. In ascertaining a tort claim's dependence on a contract, courts consider whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract.

*Id.* at 943 (internal citations and quotation marks omitted).

Paragraph 15 of the Agreement states in relevant part that "[t]his Agreement shall be construed and governed by the laws of the State of New York . . ." [Ex. A to Dkt. # 1-1]. This provision does not show an intent to encompass all rights and liabilities arising out of the transaction, but rather is limited only to "*[t]his* Agreement." *Id.* (emphasis added). Furthermore, Lipov's liability in Counts I and II is based on his unlawful conduct of creating Stella to compete with the Plaintiff and depriving the Plaintiff of necessary funding and Lipov's labor. Liability under these claims can exist independently of the Agreement. Therefore, only Count III for breach of the Agreement could be construed under New York law, and Illinois law applies to the other claims against Lipov.

Illinois law should apply to Count I against Stella for constructive trust and accounting because Stella is not a signatory to the Agreement. The Defendants argue that Stella can be bound by the choice of law provision in the Agreement because it is owned by a signatory to the Agreement (Lipov). However, this argument is based on *New York* law (*citing Sealord Marine Co. v. American Bureau of Shipping*, 220 F.Supp.2d 260, 270 (S.D.N.Y.2002)), which differs from

Illinois law. Illinois law holds that an entity that is not a party to a contract cannot invoke a choice-of-law provision contained in the contract. *See Jakubik v. Jakubik*, 566 N.E.2d 808, 810 (Ill. App. Ct. 1991) ("However, wife's attorney was not a party to the contract he asserts as a basis for applying Massachusetts law. Therefore, wife's attorney was neither bound by its terms, nor can he invoke its terms as a bar to the application of Illinois law."). Because Illinois choice of law analysis applies, a nonparty like Stella cannot take advantage of the choice of law in the Agreement.

**II.     The Court Must Disregard the Exhibit to the Defendants' Motion.**

The Defendants improperly attach a letter dated July 8, 2019 to their Motion to Dismiss [Dkt. # 11-2] that must be disregarded by the Court. "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*quoting Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)). The Seventh Circuit is clear that this is "a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.*

Here, the July 8, 2019 letter is neither referred to in the Complaint nor central to the Plaintiff's claims. The Plaintiff attached the operative contract—the shareholders agreement—to the Complaint as Exhibit A. The Defendants argue that the "Plaintiff refers to an oral agreement to modify the Agreement, that was intended to be formalized in a written letter send from Lipov to DeFina on July 8, 2019, in which Lipov informed DeFina of the new company." [Dkt. # 11-1, at pg. 3].

6

This is a gross misstatement of the allegations in the Complaint. The Plaintiff's allegation that Lipov informed DeFina in or about 2019 that he was going to create a competing company using the Plaintiff's Confidential Information does not refer to the July 8, 2019 letter. The Plaintiff does not identify the letter attached to the Motion to Dismiss in the Complaint. A mere allusion to Lipov's communication that he was going to create a new company does not permit the Defendants or the Court to depart from the four corners of the Complaint when applying Rule 12(b)(6) scrutiny. *See Popper v. Kaech*, 20-CV-4383, 2021 WL 2986307, at *4 (N.D. Ill. July 15, 2021) ("[I]mplicating or alluding to a document is not the same as referring to it. Because the complaint does not refer to these three inspection reports, the Court declines to consider them [in support of a Rule 12(b)(6) motion to dismiss]."). Therefore, the July 8, 2019 letter must be disregarded at this stage.

Even if the Court is inclined to consider the July 8, 2019 letter at this stage, it is not a valid contract on its face because it was not signed by the Plaintiff or DeFina. It is axiomatic that an enforceable contract requires offer and acceptance. *See Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 728 (N.D. Ill. 2017) ("As every first-year law student learns, formation of a valid contract requires an offer and acceptance."); *Sterdjevich v. RMK Mgmt. Corp.*, 796 N.E.2d 1146, 1157 (Ill. App. Ct. 2003) ("Generally, a written contract or lease is not considered binding until it is executed by the parties involved."). "Where the reduction of an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon." *In re Marriage of Chaltin*, 506 N.E.2d 338, 340 (Ill. App. Ct. 1987). Here, there is no question that the parties contemplated a signed, written settlement agreement. The letter plainly states that "[t]his letter and the agreement herein will be effective *when you sign it*." [Dkt. # 11-2] (emphasis added). There is

7

nothing to suggest that the Plaintiff ever accepted the terms of this document via signature. Accordingly, the July 8, 2019 letter is irrelevant.

### III. The Plaintiff's Claim for a Constructive Trust and Accounting Against the Defendants (Count I) is Sufficiently Pled.

The Defendants incorrectly argue that the Plaintiff failed to state a claim for a constructive trust and accounting against either Defendant. Under Illinois law, "[t]wo essential elements of a constructive trust action are the existence of identifiable property to serve as the res upon which a trust can be imposed and possession of that res or its product by the person who is to be charged as the constructive trustee." *People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 191 (Ill. App. Ct. 1986). A constructive trust is a remedy, not a cause of action. *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E3d 1023, 1045 (Ill. App. Ct. 2015). Therefore, a request for imposition of a constructive trust may be contained with a claim with an accounting. *See, e.g.*, *Candy Club*, 501 N.E.2d at 191 ("Accordingly, we find that the allegations as stated in the State's complaint are sufficient to state a cause of action for both an accounting and the imposition of a constructive trust."). To sustain an action for an accounting in equity the complaint must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature. *Id.* at 190. When a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment. *DiMucci*, 34 N.E3d at 1045. A constructive trust is imposed: (1) where actual or constructive fraud is considered as equitable

8

grounds for raising the trust; (2) where there is a fiduciary duty and a subsequent breach of that duty; or (3) when duress, coercion or mistake is present. *Id.*[1]

Here, the Plaintiff sufficiently stated a claim for an accounting. The Plaintiff does not have an adequate remedy at law because it does not have access to the books and records of the Plaintiff so the Plaintiff does not know how much in profits the Defendants have made using the Plaintiff's Confidential Information and otherwise taking advantage of Lipov's breach of fiduciary duty. [Dkt. # 11-1, ¶ 22].

In any event, *People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188 (Ill. App. Ct. 1986) makes clear that, "[a]lthough it is true, as defendant contends, that equitable remedies are denied when there is an adequate remedy at law, *this court has recognized an exception in cases in which an accounting is sought based on a breach of a fiduciary duty*." *Id.* at 190 (emphasis added). In fact, this exception also exists under New York law. *See Mullin v. WL Ross & Co. LLC*, 173 A.D.3d 520, 522 (N.Y. App. Div. 2019) ("This right, as distinguished from a claim for an accounting in which there is no fiduciary relationship, does not require a showing that there is no adequate remedy at law. It is automatic and springs from the fiduciary relationship itself."). The Plaintiff clearly pled that Lipov—as a director, officer, and shareholder of the Plaintiff (a closely held corporation)—owed fiduciary duties to the Plaintiff. [Dkt. # 1-1, ¶ 7]. The Plaintiff need not plead that it lacks an adequate remedy at law.

Additionally, the Plaintiff pled the need for discovery since the exact amount of profits earned by the Defendants is not known to the Plaintiff without access to its books and records. To the extent that the Defendants argue that a "specific promise" is required, the Plaintiff pled that Lipov agreed in the Agreement to devote his time and best efforts in furtherance of the business

---

[1] While the Plaintiff maintains that Illinois law applies to Count I, there are no material differences between Illinois law and New York law, and the Plaintiff states a claim whether either state's law is applied.

9

of the Plaintiff, not to disclose the Confidential Information, and to fulfill his fiduciary obligations. [Dkt. # 1-1, ¶ 7, 10-11]. Accordingly, the Plaintiff adequately pled a claim for an accounting against Lipov.

The Plaintiff has also sufficiently pled a claim for an accounting against Stella. The Plaintiff lacks an adequate remedy at law against Stella because Stella is not a party to the Agreement. The Plaintiff cannot sue Stella for breach of the Agreement. Stella has earned and retained profits that rightfully belong to the Plaintiff. [Dkt. # 11-1, ¶ 22-24]. The Plaintiff needs discovery since the exact amount of profits earned by the Defendants is not known to the Plaintiff without access to its books and records. This is textbook unjust enrichment. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (holding that unjust enrichment includes, *inter alia*, situations where "the defendant procured the benefit from the third party through some type of wrongful conduct" or where "the plaintiff for some other reason had a better claim to the benefit than the defendant").

Anchored to the valid claim for an accounting, the Plaintiff sufficiently pled entitlement to imposition of a constructive trust against the Defendants. The Plaintiff pled both requisite elements: (1) the existence of an identifiable res, to wit, the profits the Defendants earned as a result of Lipov breach of fiduciary duty; and (2) the possession of that res by either or both of the Defendants. [Dkt. # 1-1, ¶ 22-24]. Therefore, Count I should not be dismissed.

IV. **The Plaintiff's Claim for Breach of Fiduciary Duty Against Lipov (Count II) is Sufficiently Pled.**

The Plaintiff sufficiently pled a claim against Lipov for breach of his fiduciary duties. The requisite elements are substantively similar under Illinois or New York law. *See Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1075 (Ill. App. Ct. 2012) ("To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, the breach of that

10

duty, and damages proximately caused therefrom."); *Stinner v. Epstein*, 162 A.D.3d 819, 820 (N.Y. App. Div. 2018) ("The elements of a breach of fiduciary duty cause of action are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct . . ."). The Defendants concede that Lipov owed fiduciary duties to the Plaintiff, and the Defendants do not contest that the Plaintiff sustained damages. Instead, the Defendants' argument is limited to the breach/misconduct element. [Dkt. # 1-1, ¶ 20].

The Plaintiff alleged that Lipov breached his fiduciary duty by disclosing Confidential Information to third parties, using the Confidential Information to compete with the plaintiff, and using the Confidential Information in a manner not contemplated by the Agreement. [Dkt. # 1-1, ¶ 20.b.]. The Defendants argue that the Confidential Information is not specifically identified. Confidential Information is a defined term in the Agreement denoted as:

> [T]he proprietary information provided to the [Plaintiff] by the Shareholders and any nonpublic information that the [Plaintiff] specifically marks and designates, either orally or in writing, as confidential or which, under the circumstances surrounding the information, ought to be treated as confidential or which the Shareholders or either one of them creates or produces in the course of performing services for the [Plaintiff]. "Confidential Information" includes, but is not limited to, information received from others that the [Plaintiff] is obligated to treat as confidential and other materials and information of a confidential nature.

[Ex. A to Dkt. # 1-1].

The Defendants argue that the procedures contributed by Lipov were already in the public record, but there are no allegations *in the Complaint* to support this argument. To the contrary, the Plaintiff pled that the SGB procedures were "proprietary." [Dkt. # 1-1, ¶ 9]. The procedures and methods of neurological treatment are patently far different than a restaurant's menu, the example set forth by the Defendants from the inapposite case of *BLT Rest. Group LLC v. Tourondel*, 855 F. Supp. 2d 4 (S.D.N.Y. 2012).

11

Moreover, the Defendants' argument that Lipov resigned from the Plaintiff and that his proprietary procedures reverted back to him is improper. As stated in Section II *supra*, the Defendants cannot rely on the unsigned July 8, 2019 letter attached to their Motion to Dismiss because it is not referenced in the Complaint. *See Popper*, 2021 WL 2986307, at *4 ("[I]mplicating or alluding to a document is not the same as referring to it. Because the complaint does not refer to these three inspection reports, the Court declines to consider them [in support of a Rule 12(b)(6) motion to dismiss]."). There are no allegations *in the Complaint* that Lipov resigned and that the Plaintiff was dissolved or ceased doing business. The Defendants must accept the well-pled allegations in the Complaint as true at this stage.

The Defendants further argue that the non-compete provision in the Agreement is unenforceable. The Plaintiff pled that Paragraph 10 of the Agreement provided that upon termination of a shareholder or the Agreement, neither shareholder for a period of three years thereafter, "work for, own an interest in, operate, join, control, participate in or be connected, either directly or indirectly, as an officer, employee, agent, independent contractor, advisor, consultant, shareholder or principal of and [*sic*] corporation or other entity which diagnoses, treats or refers patients for treatment of Post-Traumatic Stress Disorder, or in any way competes, either directly or indirectly, with the business of the [Plaintiff], and no Shareholder shall induce or influence any person who is engaged by the [Plaintiff] as an employee, licensee, agent, or independent contractor, to engage in or otherwise participate in any business or activity which directly or indirectly competes with the [Plaintiff]." [Dkt. # 1-1, ¶ 12].

The Defendants argue that this provision is unenforceable because it does not contain a geographic limitation and because three years is "overly broad." [Dkt. # 11-1, pg. at 13]. Crucially—and distinguishing this case from the cases relied on by the Defendants—the Plaintiff

12

is not seeking in the Complaint to enforce the non-compete provision. While Lipov's breach of the non-compete provision may be one example of how Lipov has breached the Agreement, it is not the only breach. Additionally, both of the New York cases relied on by the Defendants were decided at the summary judgment stage, not on a motion to dismiss under Rule 12(b)(6). The ultimate enforceability of the non-compete language, if necessary, is an "inherently factual issue" that courts decline to consider on a motion to dismiss under Rule 12(b)(6). *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chi.*, 45 F.3d 1144, 1154 (7th Cir. 1995).

With respect to the Paragraph 3 of the Agreement which obligates Lipov to devote such time and best efforts as needed to continue to develop and refine the procedures described in the Agreement, the Defendants argue in a conclusory manner that this provision is unenforceable because the Agreement does not define what constitutes best efforts. The Defendants' ignore the plain language of Paragraph 3. Paragraph 3 states that:

> The Shareholders agree that they will each devote such time and best efforts as needed to continue to develop and refine the procedures referred to herein above to be used together to form a coherent plan and modality for treatment of Post Traumatic Stress Disorders and to further license or sublicense the combined procedure to various medical doctors and facilities for the diagnosis and treat [*sic*] of patients. In furtherance of the [Plaintiff's] purpose the Shareholders will cooperate in developing and preparing training manuals and programs for the use of the licensed/sublicensed technology and to actively participate in the training of licensees.

[Ex. A to Dkt. # 1-1]. Contrary to the Defendants' argument, Paragraph 3 describes the goals to which Lipov's best efforts should be directed, to wit, "a coherent plan and modality for treatment of Post Traumatic Stress Disorders and to further license or sublicense the combined procedure to various medical doctors and facilities for the diagnosis and treat of patients." *Id.* Lipov and DeFina are also to "cooperate in developing and preparing training manuals and programs for the

13

use of the licensed/sublicensed technology and to actively participate in the training of licensees." *Id.* This is far more specific than the facts in the cases relied on by the Defendants.

Additionally, it is certainly reasonable to construe Lipov's direct competition with the Plaintiff and his failure to devote any time to the business of the Plaintiff as the antithesis of "best efforts." [Dkt. # 1-1, ¶ 15-21]. Construing these allegations in the Plaintiff's favor at this stage, the Complaint is sufficiently pled so as to pass muster on this issue.

Lastly, the Defendants argue that Lipov no longer owed a fiduciary duty to the Plaintiff after he purportedly resigned all duties and shares of the Plaintiff in 2019 such that Lipov's wrongful actions of convincing Modica to invest in Stella were not a breach of Lipov's fiduciary duties. As stated above, Lipov's claim that he resigned in the July 8, 2019 letter is improper because this extrinsic evidence cannot be considered under Rule 12(b)(6). *See* Section II *supra*. Even if the letter could be considered, it is facially unenforceable because it is not signed by DeFina or the Plaintiff. Accordingly, the Plaintiff sufficiently stated a claim for breach of fiduciary duty against Lipov in Count II.

**V.     The Plaintiff's Claim for Breach of Contract Against Lipov (Count III) is Sufficiently Pled.**

The Plaintiff sufficiently pled a claim against Lipov for breach of the Agreement. Under both Illinois and New York law, the elements of a breach of contract cause of action include the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff. *Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2012); *LMEG Wireless, LLC v. Farro*, 190 A.D.3d 716, 718 (N.Y. App. Div. 2021).

The Defendants incorporate their arguments related to Count II to cavil that Count III is insufficiently pled. For the reasons stated in Section IV *supra*, the Defendants' arguments miss

14

the mark. Most importantly, the Complaint satisfies each element required to plead a claim for breach of contract. The Plaintiff pled that the Agreement is a valid and enforceable contract. [Dkt. # 1-1, ¶ 5-13]. The Plaintiff pled that it performed or was ready to perform all obligations required by it under the Agreement. [Dkt. # 1-1, ¶ 31]. The Plaintiff pled that Lipov breached Paragraphs 3, 5, and 10 of the Agreement. [Dkt. # 1-1, ¶ 29]. And the Plaintiff pled that it was damaged by Lipov's breach. [Dkt. # 1-1, ¶ 30]. Therefore, Count III is sufficiently pled.

## Conclusion

WHEREFORE, the Plaintiff, Neuroscience Advanced Systems Inc., respectfully requests that this Court enter an order denying the Defendants' Rule 12(b)(6) Motion to Dismiss and granting any other relief this Court deems fair.

| | |
|---|---|
| Marty J. Schwartz (#3124462)<br>Thomas J.K. Schick (#6330400)<br>SCHAIN, BANKS, KENNY & SCHWARTZ, LTD.<br>70 W. Madison Street<br>Suite 5400<br>Chicago, Illinois 60602<br>(312) 345-5700<br>mschwartz@schainbanks.com<br>tschick@schainbanks.com | Respectfully submitted,<br><br>**NEUROSCIENCE ADVANCED SYSTEMS INC.**<br><br>   /s/ Marty J. Schwartz<br>One of its attorneys |

## CERTIFICATE OF SERVICE

I, Thomas J.K. Schick, an attorney, certify that on March 28, 2023, I served a true and correct copy of the foregoing to below-named attorney who is registered to receive electronic filings, electronically by operation of the Clerk of the U.S. District Court's Electronic Case Filing (ECF):

Paul M. Bach
PO Box 1285
Northbrook, IL 60065
paul@bachoffices.com

in accordance with the General Order on Electronic Case Filing which documents the parties may access through the Court's ECF.

                                                            /s/ Thomas J.K. Schick